UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANA LOPEZ, an individual,<br><br>                      Plaintiff,<br><br>    v.<br><br>DOWNTOWN LAS VEGAS EVENTS CENTER,<br><br>                      Defendant. | Case No. 2:19-cv-01532-KJD-NJK<br><br>ORDER |

Presently before the Court is Defendant's Motion for Summary Judgment (#31). Plaintiff filed a response in opposition (#36) to which Defendant replied (#37).

I. Facts

Plaintiff, Ana Lopez, worked as an Event Coordinator for the Downtown Las Vegas Events Center ("DLVEC") from April 1, 2017 to November 21, 2017. Amy Brown ("Brown"), Director of Ticketing for DLVEC, served as her supervisor and initially hired Plaintiff. Brown asserts that she gave Plaintiff many verbal and informal warnings about behaviour that violated company policy, such as fraternizing with family and friends during DLVEC events and failing to clock out when socializing.

In September 2017, during the "Miller Lite Event" at DLVEC, Plaintiff escorted guests to VIP areas where she remained, hanging out with friends who were attending the event. Additionally, Brown instructed Lopez to prepare a document summarizing the Miller Lite Event. Plaintiff failed to adequately prepare the document summarizing the Event for accounting purposes. When Brown criticized Plaintiff's performance and asserted that she had violated company policy by fraternizing with friends on the clock, Lopez grew upset, reacted loudly and raised her voice to Brown. Consequently, Brown issued Plaintiff a verbal warning and instructed

Plaintiff to clock out and go home for the evening. Notably, Plaintiff conceded her misbehavior and violation of company policy when she apologized to Ms. Brown the next day.

In October 2017, Bud Pico ("Pico"), the General Manager of DLVEC, had entered into preliminary discussions with Univision Radio Group ("Univision") to promote a Baile Privado Event (the "Univision Event"). As General Manager, it was Mr. Pico's decision as to whether the DLVEC would contract with Univision. Mr. Pico had not made a final decision whether to go forward with the Univision Event and no agreement had been signed regarding the same. Regardless, on Saturday, October 21, 2017, Plaintiff, without consent of Mr. Pico, contacted the company's finance department and requested a wire transfer to Univision in the amount of $25,000.00. When questioned about her actions, Plaintiff falsely stated she had received approval for the transfer from Mr. Pico when no such authorization had ever been given. On Monday October 23, 2017, unaware of the unauthorized wire transfer, Mr. Pico decided not to proceed with the Univision Event.

As a result of her actions, Plaintiff was suspended pending investigation. Upon her reinstatement, Plaintiff was placed on a disciplinary plan (the "90 Day Plan") which required her to, among other things, follow policies and procedures obtaining proper approvals. Plaintiff signed the 90 Day Plan and agreed to follow it.

On Friday November 17, 2017, the DLVEC hosted a free event. Due to capacity limits, although the event was free, DLVEC required tickets to maintain an accurate count on the number of attendees. For this particular event, there were leftover tickets. Brown informed Plaintiff that she would be on vacation during the event. Plaintiff asked if she could enlist the assistance of her family members to distribute tickets for the event. Brown declined Plaintiff's request.

Despite Brown's clear instructions, Plaintiff allowed her two nephews to work the ticket booth without proper approval or authorization. Plaintiff concedes that she instructed her nephews to pass out the remaining leftover tickets to people at the box office. Hiring or allowing any individual to work for DLVEC without approval or authorization is a direct violation of company policy and subjected Plaintiff to discipline. Given that Plaintiff had been placed on the

90 Day Plan immediately before this event, and her behavior was in complete disregard of a direct order from her supervisor and in violation of the company's policies, the decision was made to fire Plaintiff. She was terminated on November 21, 2017.

On or about June 4, 2018, Plaintiff filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC"). She alleged discrimination based on National Origin stating that she was "subjected to harassment, different terms and conditions of employment, suspension and discharged." She specifically complained about constant harassment and comments based on her national origin by a co-worker, the Operations Manager. However, she admits that at no time while she was employed did she notify her supervisor or the appropriate employee under the employer's process for reporting harassment.

After receiving her right-to-sue letter, she filed the present complaint on September 3, 2019. She asserts claims for retaliation, national origin discrimination (disparate treatment), hostile work environment and emotional distress. Defendant has now moved to dismiss each of her claims. In response, Plaintiff has waived her retaliation claim, but continues to press her disparate treatment and hostile work environment claims.

II. Standard for Motion for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587. However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine

issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The court need only resolve factual issues of controversy in favor of the non-moving party where the facts specifically averred by that party contradict facts specifically averred by the movant. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment). Evidence must be concrete and cannot rely on "mere speculation, conjecture, or fantasy. O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment shall not be granted if a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 248.

III. Analysis

  A. Disparate Treatment

Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing a Title VII national origin discrimination action under a theory of disparate treatment must demonstrate that her employer took one or more adverse employment actions against the plaintiff because of the plaintiff's national origin. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 92–93, 99–100 (2003). An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of ... employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

If an employer moving for summary judgment on a disparate treatment claim meets its initial burden, "the plaintiff is presented with a choice regarding how to establish his or her

case." McGinest v. GTE Service Corp., 360 F.3d 1103, 1122 (9th Cir. 2004). The plaintiff may proceed by using the burden-shifting framework first set out in McDonnell Douglas Corp. v Green, 411 U.S. 792 (1973), or alternatively, may produce direct or circumstantial evidence that a discriminatory reason motivated the defendant in taking the challenged actions against the plaintiff. McGinest, 360 F.3d at 1122. The plaintiff retains the burden of persuasion throughout, regardless of whether or not the plaintiff chooses to use the McDonnell Douglas framework. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Under McDonnell Douglas, a Title VII plaintiff "must first establish a prima facie case of discrimination." Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123 (9th Cir. 2000). A plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." Chuang, 225 F.3d at 1123.

This shifts the "burden of production, but not persuasion, ... to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." Chuang, 225 F.3d at 1123–24. "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for" the challenged adverse employment actions. Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting Burdine, 450 U.S. at 255). Whether a defendant has met its burden of production involves "no credibility assessment." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993). "In other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the defendant's evidence at the summary judgment stage, even if it has reason to disbelieve that evidence." Bodett v. CoxCom, Inc., 366 F.3d 736, 742 (9th Cir. 2004).

If the defendant meets this burden of production, any presumption that the defendant discriminated "drops from the case." St. Mary's Honor Ctr., 509 U.S. at 507–11. At this point, the plaintiff must be given the opportunity to demonstrate that the proffered reason or reasons were pretext for intentional discrimination. Burdine, 450 U.S. at 255–56.

The plaintiff may offer additional evidence to rebut the employer's proffered reasons but

the plaintiff is not necessarily required to produce evidence in addition to the evidence produced to establish the prima facie case. Lyons, 307 F.3d at 1112–13; Chuang, 225 F.3d at 1127. This is because a reasonable factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out his prima facie case if the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility. Lyons, 307 F.3d at 1112–13 (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000)).

To establish that a defendant's nondiscriminatory explanation is pretext for discrimination, a plaintiff may rely on circumstantial evidence or direct evidence or both. See Chuang, 225 F.3d at 1127. Typically, circumstantial evidence offered by a plaintiff to prove pretext will take one of two forms. Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005); Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003) (as amended Jan. 6, 2004). The plaintiff may "make an affirmative case that the employer is biased." Coghlan, 413 F.3d at 1095; Stegall, 350 F.3d at 1066 (describing the first option as "persuading the court that a discriminatory reason more likely motivated the employer"). Or, the plaintiff may "make his case negatively, by showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.' " Coghlan, 413 F.3d at 1095.

First, the Court must grant summary judgment to Defendant on Plaintiff's disparate treatment claim, because she has not shown that any similarly situated employees were treated differently. Her general conclusions that other employees were allowed to socialize and take photos during DLVEC events contain no specifics from which a fact finder could determine whether those employees were similarly situated to Plaintiff or not. To show that the "employees" allegedly receiving more favorable treatment are similarly situated (the fourth element necessary to establish a prima facie case under Title VII), the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects. See Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006) (citing Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 660 (9th Cir. 2002) (citing with approval the Second Circuit's opinion in McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) which stated

that "similarly situated" means that employees must "be similarly situated in all material respects")); see also Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir.1998) (holding that "the plaintiff must show that the 'comparables' are similarly-situated in all respects" (citation and internal quotation marks omitted)); Lynn v. Deaconess Med. Center-West Campus, 160 F.3d 484, 487 (8th Cir.1998) (requiring that employees be "similarly situated in all relevant respects"). Plaintiff fails to adduce any evidence of employees that were similarly situated, i.e., disciplined or not disciplined for submitting wire transfers without proper authorization, allowed family members to work or hand out tickets against their direct supervisor's specific orders, or socialized at events while on the clock.

Finally, Plaintiff's discrimination claim for her termination must be dismissed because she has adduced no relevant evidence from which a fact finder could conclude that the employer's legitimate, nondiscriminatory reason for her termination was merely pretext for actual discrimination based on her national origin. Plaintiff's reliance on stray remarks by a co-worker, who is not linked to her termination, is insufficient to avoid summary judgment. See Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) ("stray" remarks are insufficient to establish discrimination). In the Ninth Circuit, discriminatory statements can only demonstrate direct evidence of employment discrimination when the employer, not co-worker, makes the discriminatory statements. See Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993). Here, Plaintiff has presented no evidence of conduct by the decision makers on her termination that raises even an inference that their stated reasons for her dismissal were pretextual. Accordingly, the Court grants summary judgment to Defendant on Plaintiff's claims for disparate treatment and discrimination based on national origin.

B. Hostile Work Environment

To prevail on her harassment claim, Plaintiff must show: (1) that she was subjected to verbal or physical conduct because of her national origin; (2) "that the conduct was unwelcome"; and (3) "that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." See Gregory v. Widnall, 153 F.3d 1071, 1074 (9th Cir.1998). Generally, a plaintiff alleging racial or national origin

harassment would present facts showing that she was subjected to racial epithets in the workplace. To establish whether Defendant's conduct was sufficiently severe or pervasive enough to alter the conditions of Plaintiff's employment or create an abusive environment, Defendant's conduct must be more than "merely offensive," and must create an objectionably hostile work environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

Merely offensive comments, teasing, and isolated incidents are not sufficient to create a hostile work environment. Id. at 21-22; see also Garrity v. Potter, 2008 WL 872992, *4-5 (D. Nev. 2008) (finding rude, insensitive, or unpleasant conditions are not sufficient to create a hostile work environment); see also Crawford v. Medina General Hosp., 96 F.3d 830, 836 (5th Cir. 1996). "[I]solated comments would not alone support a claim for hostile work environment." McGinest, 360 F.3d at 1112 (citing Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1020 (9th Cir. 2018)) ("A violation is not established merely by evidence showing sporadic use of abusive language, [national origin]-related jokes, and occasional teasing."); Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005) ("Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."); Kortan v. Calif. Youth Authority, 217 F.3d 1104, 1110 (9th Cir. 2000) (offensive comments "mainly made in a flurry" on one day do not constitute hostile work environment).

The Court agrees with Defendant that Plaintiff's allegations are neither severe nor pervasive enough to establish a claim, even when drawing all inferences in the light most favorable to her. "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." McGinest, 360 F.3d at 1113; see, *e.g.*, Pringle v. Wheeler, 478 F. Supp. 3d 899, 914 (N.D. Cal. 2020) (rejecting the argument that a pattern of racially disparate treatment over five years was not sufficiently severe because each incident should be analyzed separately as "counter to the concept of a hostile work environment" and "inconsistent with the holistic approach endorsed by the Ninth Circuit and the Supreme Court"); see also Shaninga v. St. Luke's Med. Ctr. LP, Case No. CV-14-02475-PHX-GMS, 2016 WL 1408289, at *13 (D. Ariz. Apr. 11, 2016) (acknowledging that "repeated derogatory or

humiliating statements can constitute a hostile work environment" but finding the work environment was not hostile because the plaintiff only cited three incidents). The Ninth Circuit more recently found that comments that did not include racial slurs but were nevertheless tinged with racism, such as "we should close the borders to keep motherf***ers like you from coming up here," were "demeaning comments that directly reference race or national origin," not " 'offhand comments' or 'merely offensive utterance[s].' " See Reynaga v. Roseburg Forest Prods., 847 F.3d 678, 688 (9th Cir. 2017) (distinguishing Faragher v. City of Boca Raton, 524 U.S. 775 (1998)); see also Kendall v. Nevada, 434 F. App'x 610, 612-13 (9th Cir. 2011) (reversing summary judgment because a series of demeaning comments that extended throughout the plaintiff's employment could establish a hostile work environment claim even if one incident alone may not be actionable).

Here, though the comments were made on more than one occasion, the conduct is neither severe nor pervasive. The comments, which the Court finds distasteful and unprofessional, were not vulgar or accompanied by physical violence. In fact, Plaintiff considered Stuard, the commenter, a friend and associated with him outside of work. "The Supreme Court has followed a 'middle path' with regard to the level of hostility or abuse necessary to establish a hostile work environment." McGinest, 360 F.3d at 1112. "In evaluating the objective hostility of a work environment, the factors to be considered include the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks omitted). Viewing the evidence in the light most favorable to Lopez, the evidence is insufficient to withstand summary judgment. The harassment did not alter the terms and conditions of her employment. In fact, she testified that she tried to brush the comments off and continued to socialize with the perpetrator outside of work. Therefore, the Court grants summary judgment on Plaintiff's claim for a hostile work environment.

C. Supplemental Jurisdiction over Remaining State Law Claim

A district court has discretion to decline to exercise supplemental jurisdiction over a claim if all claims over which it has original jurisdiction have been dismissed or if the claim raises a novel or

complex issue of state law. See 28 U.S.C. § 1367(c). Since the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's emotional distress state law claim. Therefore, that claim is dismissed without prejudice.

IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#31) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff on Plaintiff's Title VII claims;

IT IS FURTHER ORDERED that Plaintiff's state law claim for emotional distress is **DISMISSED without prejudice**.

DATED this 22nd day of September 2021.

_____
The Honorable Kent J. Dawson
United States District Judge